## Radenbach's Estate.

*Statute of limitations—Mutual accounts—Promise to pay.*

1. Where there are mutual demands, if any item of such account be within six years from the commencement of the suit, such item is deemed equivalent to a subsequent promise reviving the debt. It takes the case out of the statute, and it is immaterial whether the parties are merchants or not, and it goes on the ground of implied promise.

2. Where a claim is presented in the orphans' court against an estate of a decedent based upon a balance alleged to be due upon an unsettled account, the discretion of the court will not be reviewed on appeal where there is sufficient and competent evidence to show that the claimant and decedent had treated the business transactions between them involving the sale of various chattels as constituting a current open mutual account, the various items to operate as a set-off to each other, and the balance when ascertained to constitute the debt, and that when the decedent made her last purchase, being within six years prior to the presentation of the claim, that purchase was made by her with the understanding that it was upon such unsettled account.

Argued Nov. 12, 1912. Appeal, No. 102, Oct. T., 1912, by William Seigfried, from decree of O. C. Berks Co., Feb. T., 1912, No. 22, dismissing exceptions to adjudication in Estate of Rebecca Radenbach, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

BLAND, P. J., stated the facts to be as follows:

Nathaniel P. Staudt, the claimant, was a farmer and butcher, and Rebecca Radenbach, the decedent, was engaged in farming, when the transactions occurred, upon which this litigation is grounded.

The following account, kept by the claimant, shows the transactions embraced in the mutual dealings of the parties: "1896, Nov. 21, to 85 lbs. beef, @ 9c., $7.65; 1899, Dec. 19, by one hog, 242 lbs. at 5¼c., $12.70; 1900, Oct. 25, to 100 lbs. beef at 8c., $8.00; Oct. 25, to 20 yards casing, .30; Dec. 11, to one butcher knife, .40; 1901, Nov. 22, to two bungs, @ 15c., .30; Nov. 22, to 130 lbs. beef, @ 8c., $10.40; 1903, Feb. 18, to 38 lbs. beef, @ 8c., $2.88; Dec. 19, to one horse, "Dick," $140.00; 1904, Jan. 24, to one horse-collar, $2.50; Feb. 11, by credit on balance of two hogs, $30.66; 1906, Feb. 2, to 61 lbs. beef, @ 19c., $5.49." .

The articles particularly objected to by the accountant, as not a subject of an account of mutual dealings between the claimant and the decedent, is the horse, "Dick," sold by the claimant to the decedent. The oral testimony shows that the claimant, Staudt, used horses in his wagons employed for the delivery of meat furnished to his customers, and that when such horses were no longer efficient for his purpose, he disposed of them; and that, in accordance with this usage of his business, the horse "Dick" was sold to the decedent. The oral testimony proves the claimant's practice or usage, and the sale of the horse to the decedent in accordance with it.

The court awarded the claimant $137.78.

*Errors assigned* were in dismissing exceptions to adjudication.

*D. N. Schaeffer*, with him *H. Robert Mays*, for appellant,—The account of the appellee is not a mutual running

account, but its items are disconnected and few in number and show a cessation of dealing for years at a time: Ring v. Jamison, 2 Mo. App. 584; Fennell v. Black, 24 Misc. 728 (38 N. Y. Supp. 797); Green v. Caldcleugh, 18 N. Car. (1 Dev. & B.) 320.

The sale of a horse by a butcher is not a proper subject of a book account and cannot be proved by a book of original entries. Such a sale is a special contract and if over six years old, is barred by the statute of limitations: Shoemaker v. Kellog, 11 Pa. 310; Stuckslager v. Neel, 123 Pa. 53; Fulton's Est., 178 Pa. 78.

The statute of limitations begins to run from the last item of an account which consists of a reciprocity of dealings between parties in such goods and merchandise as are proper subjects of book entries: Lowber v. Smith, 7 Pa. 381; Hudson v. Hudson, 21 Pa. Superior Ct. 92; Mattern v. McDivitt, 113 Pa. 402; Eldridge v. Smith; 144 Mass. 35 (10 N. E. Repr. 717).

*Edward D. Trexler*, for appellee.—The account of the appellee with the decedent is mutual, and the whole number of the mutual transactions are so related in time as to be continuous in the sense of the statute of limitations in its application to mutual accounts: Lowber v. Smith, 7 Pa. 381.

The sale of a horse by a farmer and a butcher who buys and sells horses as an incident to his business is a proper subject for a book account and can be proved as a mutual account by a book of original entries. The written evidence coupled with the parol testimony in this case, of the sale and delivery of the horse clearly shows that the sale of the horse was considered a part of the account and not a special contract: Abbott v. Keith, 11 Vt. 525.

The statute of limitations begins to run from the last item of a mutual account on either side, and such account may consist of property of any description and not, as the appellant contends, only of such goods and merchandise as can be proved by book entries in merchants' ac-

counts: McFarland v. O'Neil, 155 Pa. 260; Hudson v. Hudson, 21 Pa. Superior Ct. 92; McKelvy's App., 72 Pa. 402.

OPINION BY PORTER, J., February 27, 1913:

This is an appeal by the sole legatee of the decedent from the decree of the court below, making distribution to a claim against the estate presented by Nathaniel P. Staudt. Staudt, the claimant, was a farmer and butcher, and Rebecca Radenbach, the decedent, was engaged in farming, when the transactions occurred upon which the claim in question was founded. The court below found that these parties "were, from November 20th, 1896, to February 2d, 1906, engaged in mutual dealings; he selling to her articles of merchandise connected with his business as a butcher, and she selling articles of merchandise to him, connected with her business of farming; that the claimant kept a mutual account of their sales, respectively, to each other; and that the account is continuous, in a legal sense, from November 20th, 1896, to the presentation of the mutual account in this court by the claimant." The court further found: "2. That the said mutual dealings recorded in claimant's account, are shown, not only by his written account, but by the oral testimony of disinterested witnesses. 3. That it appears by the said mutual account of the claimant, and I so find, that on February 20th, 1906, there was due to the claimant, a balance of $137.78; which sum, with interest from that date, is due the claimant: that the amount due him with interest is $167.91." The court decreed payment of that amount to the claimant. The appellant complains that the court erred in finding that there were mutual accounts between the parties, "continuous in a legal sense," and, particularly, in allowing the appellee credit, in the statement of said account and the ascertainment of the balance, for $140 for a horse, which had been sold by appellee to decedent on December 19, 1903, and contends that this item of the claim was barred by the statute of

limitations. The appellant raised these questions by exceptions to the adjudication in the court below, which exceptions the court dismissed, upon the ground that all the transactions between the parties constituted a mutual, current, open account, the last item of which was within six years prior to the presentation of the claim in court.

If the claim for the price of the horse had stood alone there would have been nothing to save it from the bar of the statute of limitations. That item, however, did not stand alone, it was one of a series of transactions, involving sales of commodities by each of the parties to the other, and giving to each reciprocally a right of action against the other. "When there are mutual demands, if any item of such account be within six years from the commencement of the suit, such item is deemed equivalent to a subsequent promise reviving the debt. . . . It takes the case out of the statute, and it is immaterial whether the parties are merchants or not, and it goes on the ground of implied promise:" Van Swearingen v. Harris, 1 W. & S. 356. That case was decided upon the authority of Catling v. Skoulding, 6 T. R. 189, the history of which and of the English decisions which preceded and followed it is fully discussed in the dissenting opinion of Mr. Justice KENNEDY in Thomson v. Hopper, 1 W. & S. 467. The rule as above quoted has not since been questioned, in those cases in which the transactions have been found to constitute a mutual, open, current account, and it has been applied in many cases among which may be cited Chambers v. Marks, 25 Pa. 296; McFarland v. O'Neil, 155 Pa. 260. In the application of the rule the question necessarily arises whether the transactions involve such a mutual, open, current account, as that one item within six years takes the whole account out of the statute. The rule does not apply when the demand is altogether on one side, though payments on account be made, whether in cash or in kind; the manner of payment makes no difference; there must be reciprocal demands, giving a right of action to each against the other, Lowber v. Smith, 7

Pa. 381, nor to transactions involving a mere loan of money or matters that do not concern trade: Mattern v. McDivitt, 113 Pa. 402; Hudson v. Hudson, 21 Pa. Superior Ct. 92. The decisions which exempt mutual accounts from the operation of the statute of limitations rest on the implied acknowledgment arising from the mutual charge and credit between the parties, and not on the exception, in the statute, in regard to merchants' accounts: McKelvy's Appeal, 72 Pa. 409. The rule that, in accounts of this character, "every new item and credit in an account given by one party to the other is an admission of there being some unsettled account between them, the amount of which is afterwards to be ascertained; and that any act which the jury may consider an acknowledgment of its being an open account, is sufficient to take the case out of the statute," is a presumption implied from the course of the parties in dealing with the account. This rule is primarily the result of judicial construction of the general statute of limitations. In order to warrant the application of the rule it is necessary to produce evidence sufficient to warrant the inference by a jury that there has been an understanding or agreement between the parties that their several demands against each other shall constitute one entire and indivisible mutual account; that the items on both sides shall constitute parts of one actual account upon which they operate to offset or extinguish each other. pro tanto, so that the balance on each side becomes the debt: 25 Cyc. 1124. "The mutual accounts and dealings which will save a balance on either side from the bar of the statute of limitations, must be those between the accounting parties, and the whole transaction must be of such a character as to raise a legal presumption that the accounts are intended to apply to the payment or extinguishment of each other, and thus, like payments on a note, operate as an acknowledgment of the precedent indebtedness:" Stewart's Appeal, 105 Pa. 307.

There was testimony presented to the court below sufficient to sustain a finding that the decedent and the

appellee had treated the business transactions between them, involving the sale of various chattels, as constituting a current, open, mutual account, the various items to operate as a set-off or extinguishment of each other, and the balance, when ascertained, to constitute the debt; and that when the decedent made her last purchase, being within six years prior to the presentation of this claim, that purchase was made by her with the understanding that it was upon such unsettled account. The judge of the court below had the witnesses before him, and it was for him to judge of their credibility. He has found that the transactions between these parties constituted a mutual, current, open account, the last item of which was within six years, and as there was sufficient evidence to sustain the finding we are unable to say that his conclusion involved an abuse of discretion. The sale and purchase of the horse, in question, and the terms thereof were fully established by competent evidence independently of the claimant's books of original entry; this the appellant does not seriously question. The assignments of error all go to the finding of the court below that the various transactions, of which the sale of the horse was one, between the parties, constituted a mutual, current, open account, and as there was sufficient evidence to sustain that finding, the assignments must be dismissed.

The decree of the court below is affirmed.